NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**GLASSWALL SOLUTIONS LIMITED, GLASSWALL (IP) LIMITED,**
*Plaintiffs-Appellants*

**v.**

**CLEARSWIFT LTD.,**
*Defendant-Appellee*

---

2018-1407

---

Appeal from the United States District Court for the Western District of Washington in No. 2:16-cv-01833-RAJ, Judge Richard A. Jones.

---

Decided: December 20, 2018

---

ROBERT J. CARLSON, Lee & Hayes PLLC, Seattle, WA, argued for plaintiffs-appellants.

RAMSEY M. AL-SALAM, Perkins Coie, LLP, Seattle, WA, argued for defendant-appellee. Also represented by LANE M. POLOZOLA.

---

Before LOURIE, LINN, and TARANTO, *Circuit Judges.*

LINN, *Circuit Judge*.

Glasswall Solutions Limited ("Glasswall") appeals from the dismissal of its patent infringement suit against Clearswift Ltd. under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Because the district court did not err in concluding that all asserted claims of Glasswall's U.S. Patent Nos. 8,869,283 and 9,516,045 are invalid as patent ineligible abstract ideas under 35 U.S.C. § 101, we affirm.

Applying Step 1 of *Alice*, the district court characterized the claims as directed to "the filtering of electronic files and data" by regenerating an electronic file without non-conforming data. *Glasswall Solutions Ltd. v. Clearswift Ltd.*, No. 2:16-cv-01833, 2017 WL 5882415, at *4 (W.D. Wash. Nov. 29, 2017); *see Alice Corp. Pty.Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 218 (2014). We agree with the district court's characterization of what the claims are directed to and its conclusion that such filtering is abstract. The claims at issue in both patents do not purport to claim *how* the invention receives an electronic file, *how* it determines the file type, *how* it determines allowable content, *how* it extracts all the allowable data, *how* it creates a substitute file, *how* it parses the content according to predetermined rules into allowable and nonconforming data, or *how* it determines authorization to receive the nonconforming data. *See* '283 patent, claim 1; '045 patent, claim 1. Instead, the claims are framed in wholly functional terms, with no indication that any of these steps are implemented in anything but a conventional way. The use of a conventional white-list of approved application-specific functions instead of a conventional black-list of virus definitions does not change the nature of the claims.

The claims here are similar to claims found patent ineligible in *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307 (Fed. Cir. 2016). The method claims in *Intellectual Ventures I* called for receiving data, determin-

ing whether the received data matched certain characteristics, and outputting data based on the determining step. *Id.* at 1313. We held that the claims were "directed to methods of screening emails and other data files for unwanted content." *Id.* at 1311. We concluded that this was an abstract idea because filtering mail (and likewise filtering e-mail) according to known characteristics was a "long-prevalent practice." *Id.* at 1314. Other claims included "inhibiting communication of at least a portion of the computer data from the telephone network" and "determining that virus screening is to be applied" based on the parties involved. *Id.* at 1319. We held that these claims were also abstract.

The claims here do no more. Rather, the claims simply require "generic computer-implemented steps." *Id.* at 1318. Claim 1 of the '283 patent requires comparing the file's content to a set of rules, extracting conforming data, and then duplicating the conforming data (thus creating a substitute file). These are all generic computer functions. *E.g.* '283 patent, col. 8, ll. 11-13 ("In this embodiment, the [anti-virus] application 105 is a piece of computer code, which is implemented using known computer programming technique."). Claim 1 of the '045 patent requires essentially the same steps, but calls for "parsing the content data in accordance with a predetermined data format" and determining nonconforming data. These steps are directly parallel to those in *Intellectual Ventures I*. Like in *Intellectual Ventures I*, the claims here deliver the allowable content and inhibit the communication of other content. The claims merely require the conventional manipulation of information by a computer. We have often held similar conventional data manipulation to be abstract. *See Smart Sys. Innovations, LLC v. Chicago Transit Auth.*, 873 F.3d 1364, 1372 (Fed. Cir. 2017); *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016); *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n.*, 776 F.3d 1343, 1347

(Fed. Cir. 2014). The patents themselves indicate that the embodiment covering e-mail scanning is "implemented using known computer programming techniques." '283 patent, col. 8, ll. 12–14; '045 patent, col. 8, ll. 32–34. That the filtration here occurs by filtering *in* the *allowable* content rather than filtering *out* the *non-allowable* content as in *Intellectual Ventures I* does not make the claimed method any less abstract.

The claims here are unlike those found patent eligible in *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299 (Fed. Cir. 2018). In *Finjan*, the claimed invention employed "a new kind of file that enables a computer security system to do things it could not do before." *Id.* at 1305. We explained that the claims there, like those in *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016), were directed to a "non-abstract improvement in computer functionality, rather than the abstract idea of computer security writ large." *Finjan*, 879 F.3d at 1305; *Enfish*, 822 F.3d at 1336. Unlike in *Finjan*, the claims here do not filter based on *behavior*, but based on the allowable form of information within a file, e.g., content other than I-frames in HTML or complex macros in Microsoft Word. Moreover, the claims do not create a new kind of file or improve the functioning of the computer itself. The "substitute" file merely duplicates the approved content from the original electronic file. It does not allow the computer to do something it could not previously do.

The claims fare no better under *Alice* Step 2, as they recite steps that do not amount to anything more than an instruction to apply the abstract idea of filtering nonconforming data and regenerating a file without it, plus the generic steps needed to implement the idea.

Finally, we find no error in the district court's resolution of the patent ineligibility of the claims on a Rule 12(b)(6) motion. We have approved dismissal under § 101 on the pleadings in certain circumstances. *See Content*

*Extraction*, 776 F.3d at 1349. Glasswall cannot render its complaint immune from dismissal by merely asserting that its methods are "novel" and "improve the technology used in electronic communications." Dr. Leopold's declaration of the alleged advantages in the claimed invention also does not preclude dismissal on the pleadings. The alleged "factual" assertions that Glasswall points to as creating genuine issues of material fact are not factual in nature, but conclusory legal assertions which the district court was "not bound to accept as true." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

## AFFIRMED